# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COOKEVILLE DIVISION

| | |
|---|---|
| CHERYL ANNE STEDAM, individually and as Administratrix of the Estate of Tracy Charles Ray Wright, Deceased | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 2:19-cv-00032 ) |
| CUMBERLAND COUNTY, TENNESSEE, and CUMBERLAND COUNTY SHERIFF'S DEPARTMENT, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Amended Motion for Judgment on the Pleadings. (Doc. No. 17.) Stedam has responded in opposition, to which the Defendants have replied. (See Doc. Nos. 24, 25.) Stedam also has filed a Motion to Amend (Doc. No. 13), seeking to amend her complaint to name two additional defendants, Cumberland County Sheriff Casey Cox and Cumberland County Jail Administrator Tim Claflin, in their individual and official capacities. (Doc. No. 13.) The Defendants have filed a response in opposition, to which Stedam has replied. (Doc. Nos. 23, 26.) Also pending is Defendants' Motion for Permission to File Sur-Reply in relation to the Motion to Amend. (Doc. No. 27.) For the reasons stated below, Defendants' Amended Motion for Judgment on the Pleadings will be granted in part, Stedam's Motion to Amend will be granted, and Defendants' Motion for Permission to file Sur-reply will be denied as moot.

## I. Factual Background

Stedam alleges that her son, Tracy Charles Ray Wright, was an inmate at the Cumberland County Jail in March 2018. (Doc. No. 1-2 at 2.) She states that Defendants were responsible for the care and management of the inmates confined in that facility, including Wright. (Id. at 2-3.) She further alleges that Defendants were on notice of Wright's "fragile medical condition" and, despite repeated requests for medical treatment, Defendants failed to provide essential medical care to Wright. (Id. at 3.) As alleged, this failure directly resulted in and caused the death of Wright on March 11, 2018. (Id.) Stedam believes that Defendants' conduct was so blatantly inappropriate that it constitutes intentional maltreatment and deliberate indifference to Wright's care. (Id.) Accordingly, Stedam brings a 42 U.S.C. § 1983 claim for violation of Wright's constitutional rights. (Id.) Additionally, Stedam asserts that Defendants' conduct gives rise to a Tennessee state law negligence claim and violation of the Tennessee Constitution. (Id. at 3-4.) Stedam also seeks punitive damages. (Id. at 4-6.)

In response, Defendants filed a Motion for Judgment on the Pleadings, which they then amended. (Doc. Nos. 7, 17.) In their Amended Motion for Judgment on the Pleadings, Defendants seek judgment as a matter of law on Stedam's state law negligence claim. (Doc. No. 17.) Defendants first argue that Stedam's state law negligence claim is, in actuality, a health care liability claim within the ambit of Tennessee's Health Care Liability Act ("THCLA"). (Doc. No. 18 at 3.) Defendants reason that Stedam's negligence claim qualifies as a health care liability claim under the THCLA because the claim is against "a County employing a health care provider (i.e., a nurse) and [is] based on the provision of, or failure to provide, health care services to [Wright]." (Id. at 7.)

Defendants argue that, under the THCLA, there are two mandatory filing requirements to bring such a claim: (1) a certificate of good faith filing requirement; and (2) a pre-suit notice requirement. (Id. at 4.) Stedam failed to comply with these requirements, and, therefore, her Tennessee negligence claim should be dismissed. (Id. at 5.) Further, Stedam's Tennessee Constitution claims should be dismissed because Tennessee does not recognize a private cause of action for damages based upon alleged violations of the Tennessee Constitution. (Id. at 9-10.) Stedam's request for punitive damages must be dismissed because Cumberland County, and, by extension, Cumberland County's Sherriff's Department, are immune from punitive damages. (Id.) Alternatively, Defendants separately argue that Cumberland County Sheriff's Department is not a distinct legal entity subject to suit, and, therefore should be dismissed from the case. (Id. at 10.)

Stedam opposes the motion. She contends that Defendants are not "health care providers" under the THCLA, which prevents her negligence claim from qualifying as a health care liability claim. (Id. at 5.) Stedam believes that it is the role of the Court to determine whether the state law claim qualifies as a health care liability claim or sounds in ordinary negligence. (Id.) She maintains that the claim sounds in ordinary negligence because "the decision to determine whether the decedent required medical attention did not require medical science, specialized training or skill but could be determined by a lay person or any jail personnel." (Id. at 8.) Additionally, Stedam notes that she has filed a pending Motion to Amend for leave to amend her Complaint to add Casey Cox, Cumberland County Sheriff, and Tim Claslin, Captain of Cumberland County Jail, and can recover punitive damages from these defendants under § 1983 and the Government Tort Liability Act ("GTLA"). (Id. at 11.) Stedam argues that these amendments relate back to her original complaint because her failure to name Cox and Claflin was a mistake and Cox and Claflin received notice of this action and would not be prejudiced in defending against it. (Doc. No. 14.) The

3

Defendants oppose Stedam's motion, arguing that claims against them are now untimely and Stedam has not shown the necessary mistake concerning the proper party's identity required for those claims to relate back to her original filing under Federal Rule of Civil Procedure 15(c). (Doc. No. 23.)

## II. Legal Standards

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 51-52 (6th Cir. 2001) (citing Mixon v. Ohio, 193 F.3d 389, 399-400 (6th Cir. 1999)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JP Morgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted).

The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, i.e., more than merely possible. Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). However, "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. Hensley Mfg. v. ProPrise, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (quoting Bell Atlantic Corp. v.. Twombly, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 15(a)(2) provides that district courts should "freely" grant a motion for leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has explained that this "mandate" flows from the principle that a plaintiff "ought

to be afforded an opportunity to test [her] claim on the merits" where "the underlying facts or circumstances relied upon . . . may be a proper subject of relief . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). Consequently, absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Leary v. Daeschner, 349 F.3d 888, 905 (6th Cir. 2003) (quoting Foman, 371 U.S. at 182). A proposed amendment is futile when it "would not permit the complaint to survive a motion to dismiss." Miller v. Calhoun Cty., 408 F.3d 803, 817 (6th Cir. 2005). Although the Sixth Circuit "reviews denials of leave to amend only for abuse of discretion," its case law "manifests 'liberality in allowing amendments to a complaint.'" Newberry v. Silverman, 789 F.3d 636, 645 (6th Cir. 2015) (quoting Janikowski v. Bendix Corp., 823 F.2d 945, 951 (6th Cir. 1987)).

### III. Tennessee Health Care Liability Act

The THCLA governs "health care liability" claims and imposes certain notice and filing requirements on plaintiffs. Specifically, § 29-16-121 of the THCLA requires that a plaintiff asserting a claim that falls within the purview of the Act must "give written notice of the potential claim to each health care provider that will be named as a defendant" at least sixty days prior to the filing of the complaint. Additionally, § 29-26-122 of the THCLA requires that, "[i]n any health care liability action in which expert testimony is required," the plaintiff must file a certificate of good faith stating that he has consulted with an expert who believes there is "a good faith basis to maintain the action." Stedam argues that her negligence claim is not subject to the THCLA because it is not a "health care liability" claim within the meaning of the Act.

5

In determining whether a claim is subject to the THCLA, courts consider the plain language of the Act's definition of a "health care liability action," which is "conclusive." Osunde v. Delta Med. Ctr., No. W2015-01005, 2016 WL 537075, *7 (Tenn. Ct. App. Feb. 10, 2016). The THCLA defines a "health care liability action" as:

> [A]ny civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based.

Tenn. Code Ann. § 29-26-101(a). As the Court of Appeals of Tennessee has noted, "[g]iven the breadth of the statute, it should not be surprising if most claims now arising within a medical setting constitute health care liability actions." Osunde, 2016 WL 537075, at *7.

The THCLA defines "health care providers" as:

> (A) A health care practitioner licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68, including, but not limited to, medical resident physicians, interns, and fellows participating in a training program of one of the accredited medical schools or of one of such medical school's affiliated teaching hospitals in Tennessee . . .
>
> (D) The employee of a health care provider involved in the provision of health care services, including, but not limited to, physicians, nurses, licensed practical nurses, advance practice nurses, physician assistants, nursing technicians, pharmacy technicians, orderlies, certified nursing assistants, technicians and those physicians and nurses employed by a governmental health facility

Tenn. Code Ann. § 29-26-101(a)(2). "Health care services" under the THCLA "includes care by health care providers, which includes care by physicians, nurses, licensed practical nurses, pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other agents, employees and representatives of the provider, and also includes staffing, custodial or basic care, positioning, hydration and similar patient services by health providers". Id. at § 29-26-101(b).

6

## IV. Analysis

Under these definitions, Stedam's negligence claim against the Defendants is a "health care liability" claim and, therefore, is subject to the THCLA. Stedam has alleged that the Defendants negligently "failed to provide adequate medical care and treatment to the decedent while incarcerated at the Cumberland County Jail," which constituted "negligence and a violation of the duty of care owed to inmates." (Doc. No. 1-2 at 3.) Her negligence claim clearly alleges that health care providers—Cumberland County and its associated employees (i.e., jail nursing staff, physicians, and other medical employees)—failed to provide appropriate medical services (positioning, hydration, "other patient services" as defined by the THCLA) to Wright or to ensure, through Cumberland County's contracts and employee training, that such health care services were provided. See Estate of Bradley v. Hamilton Cnty., Case No. E2014-02215-COA-R3-CV, 2015 WL 9946266, at *5 (Ct. App. Tenn. Aug. 21, 2015) (holding that where plaintiff alleged that decedent's death stemmed from "negligent failure of Hamilton County jail personnel to provide basic, simple, inexpensive, effective and life-saving medical care," such a claim was governed by the THCLA).

Clearly, Stedam's claim is (1) a civil action; (2) against a health care provider; and (3) the harm alleged arises from "the provision of, or failure to provide, health care services." Thus, her alleged injuries undoubtedly arose from "the provision of, or failure to provide, health care services." Tenn. Code Ann. § 29–26–101(a)(1). When the claim is based on the injurious conduct of individuals that is related to the provision of health care, the requirements of the THCLA apply, particularly the Act's pre-suit notice requirement. Stedam does not dispute that she failed to provide the Defendants with pre-suit notice of her negligence claims, and the Court will, therefore, dismiss that claim without prejudice. See Ellithorpe v. Weismark, 479 S.W.3d 818, 828 (Tenn.

7

2015) (noting that failure to provide pre-suit notice should "result only in dismissal without prejudice").

The Court is not persuaded by Stedam's arguments that the THCLA's broad definition of "health care liability" claims does not encompass her negligence claims against the Defendants. Essentially, Stedam argues that the THCLA only applies when the allegations concern health care services supplied by the provider or to be given by the provider herself. (Doc. No. 24 at 5-11.) Steam has provided no convincing support for this limitation of the definition of a "health care liability action" under the THCLA, however, and the clear language of the definition itself does not lend itself to such a reading.

Because the Court will dismiss Stedam's negligence claims against the Defendants for failure to comply with the THCLA's pre-suit notice requirements, it need not reach the question of whether she was also required to file a certificate of good faith (a failure which would warrant dismissal with prejudice). Tenn. Code Ann. § 29-26-122(c). Such a determination would require this Court to determine whether "expert testimony is required" to prove Stedam's claims and, absent a clearer formulation of the basis for Stedam's negligence claims against the Defendants, the Court does not believe that it has the information necessary to make such a determination. The Court, therefore, declines to reach this question, and it will dismiss Stedam's claim without prejudice for failure to comply with the pre-suit notice requirement of the THCLA.

Moreover, to the extent that the Complaint raises claims under the Tennessee Constitution, such claims must be dismissed because "Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution." Cline v. Rogers, 87 F.3d 176, 179-180 (6th Cir. 1996). Stedam does not provide any argument to the contrary. (See Doc. No. 24.)

With regard to the Motion to Amend, the Defendants argue that an amendment to add Cox and Claflin would be futile because Stedam's causes of action against them are untimely. The Defendants assert, and Stedam does not contest, that the one-year statute of limitations applicable to her claims under state and federal law ran no later than March 11, 2019, and that Stedam did not file her motion to amend until May 13, 2019. The question of futility thus turns on whether there are means by which Steadam's claims against Cox and Clafin could be rendered timely.

Federal Rule of Civil Procedure 15(c)(1)(C) creates an exception to the general rule that an amendment adding a new party "'creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'" Asher v. Unarco Material Handling, Inc., 596 F.3d 313, 318 (6th Cir. 2010) (quoting In re Kent Holland Die Casting & Plating, Inc., 928 F.2d 1448, 1449 (6th Cir. 1991)). Under Rule 15(c)(1)(C), an amendment to change a party will relate back to the original pleading and be considered timely if: (1) the claims asserted in the amended pleading arise out of the conduct, transaction, or occurrence set forth in the original pleading; (2) the added party received notice of the action within ninety days of the filing of the original complaint; (3) the notice was such that the added party will not be prejudiced in defending on the merits; and (4) the added party knew or should have known that, "but for a mistake concerning the proper party's identity[,]" the action would have been brought against him or her. Fed. R. Civ. P. 15(c)(1)(B)–(C)(ii).

The Defendants address only the fourth condition, arguing that Stedam chose to sue the CCSD, not individual defendants, and cannot meet the mistaken identity requirement to name Cox and Claflin now. (Doc. No. 23 at 4–5.) But the Defendants overlook a line of Sixth Circuit precedent holding that "Rule 15(c)'s reference to a 'mistake concerning the identity of the proper party' includes [the] mistake of naming an immune institutional defendant rather than an individual

one"—the error Stedam now seeks to correct. Black-Hosang v. Ohio Dep't of Pub. Safety, 96 F. App'x 372, 376 (6th Cir. 2004). Courts of appeal including the Sixth Circuit expressly reject the argument that a plaintiff's mistaken choice to sue an immune institutional party falls outside of Rule 15(c)'s intended scope. Id. at 375 (holding that district court was "wrong" to conclude that mistakes under Rule 15(c) do not include "'a lawyer's mistake of law'" in naming defendants); see Donald v. Cook Cty. Sherriff's Dep't, 95 F.3d 548, 560 (7th Cir. 1996) ("The commentary to Rule 15(c) clearly indicates that the rule is intended to be a means for correcting the mistakes of plaintiffs suing official bodies in determining which party is the proper defendant."); Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 35 (2d Cir. 1996) ("According to the Advisory Committee Note accompanying the 1966 amendment [introducing the "mistake" criterion to Rule 15(c)], the language was prompted by several cases in which plaintiffs, unaware of the technical requirements of the law, mistakenly named institutional instead of individual defendants."). Rather, "[a] 'mistake,' as the term is used in Rule 15(c)(1)(C), occurs [not only] where the wrong party is blamed while the real culprit remains unknown, [but] also where the plaintiff has full knowledge of all relevant actors but lists the technically incorrect parties." Budget Charters, Inc. v. Pitts, No. 3:17-cv-722, 2017 WL 5444743, at *5 (M.D. Tenn. Nov. 14, 2017).

The Court finds that Stedam made just such a technical mistake here. Stedam originally sued the CCSD which is not subject to suit. She moved to amend her complaint to name Cox and Claflin after the existing Defendants pointed out her mistake. Under these circumstances, Stedam's failure to name the proper individual defendants in her original complaint instead of the CCSD "'can be characterized as a mistake for purposes of Rule 15(c)[ ] . . .'" Black-Hosang, 96 F. App'x

at 377 (quoting Soto, 80 F.3d at 37). None of the cases that the Defendants rely on in support of their argument holds otherwise.[1]

As noted, the Defendants do not argue that Stedam has failed to satisfy the remaining conditions of Rule 15(c), and the Court finds that all of the Rule's requirements have been met. Stedam's proposed amendment unquestionably asserts claims arising out the same conduct and events set forth in her original complaint. See Fed. R. Civ. P. 15(c)(1)(C) (incorporating by reference Fed. R. Civ. P. 15(c)(1)(B)). The Defendants concede that Sheriff Cox was served with a copy of the original complaint on the same day it was filed in state court and do not argue that Claflin lacks sufficient notice of this action to avoid prejudice in defending against it. (Doc. No. 1 at 2.) Stedam identified Claflin by name in her motion to amend, which she filed just sixty-eight days after her original complaint, and served the motion on the CCSD, Claflin's employer. Thus, there is no indication that either Cox or Claflin would be prejudiced in defending this action on the merits. See Fed. R. Civ. P. 15(c)(1)(C)(i). Finally, because "all public officials are presumed to know clearly established law, whether or not they have in fact ever cracked a law book[,]" Cox and Claflin should have known that they were the proper objects of Stedam's claims, not the CCSD. Woods v. Ind. Univ.-Purdue Univ. at Indianapolis, 996 F.2d 880, 887 (7th Cir. 1993) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815–19 (1982)); Soto, 80 F.3d at 36 (holding that because "government officials are charged with knowing the law, any [Brooklyn Correctional Facility] officers who were aware of a law suit arising out of the attack on [the plaintiff] 'knew or should have known' that they, not [Brooklyn Correctional Facility], were subject to liability for

---

[1] For example, both Cox v. Treadway, 75 F.3d 230 (6th Cir. 1996), and Force v. City of Memphis, 101 F.3d 702 (6th Cir. 1996) (unpublished table decision), addressed motions seeking to replace John Doe defendants with named individuals and are irrelevant to the question of replacing an immune institutional defendant with a person.

the constitutional torts he alleged" (citations omitted)); see Fed. R. Civ. P. 15(c)(1)(C)(ii). Because Stedam's mistake in naming the CCSD instead of Cox and Clafin falls within Rule 15(c)(1)(C)(ii)'s definition of that term, her proposed amendments relate back to her original filing and are not futile. Finally, given that the Motion to Amend will be granted, the Court will defer deciding on whether Stedam can maintain her claim for punitive damages under § 1983 and the GTLA.

An appropriate Order will enter.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE